UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND M. TASH, DDS ) | SACV 14-01914 AG (RNBx) |
| ) | |
| Plaintiff, ) | **FINDINGS OF FACT AND** |
| v. ) | **CONCLUSIONS OF LAW** |
| ) | |
| METROPOLITAN LIFE ) | |
| INSURANCE COMPANY; PACIFIC ) | |
| DENTAL SERVICES, INC., ) | Complaint Filed: December 3, 2014 |
| EMPLOYEE BENEFIT PLAN, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## **FINDINGS OF FACT**

After reviewing and evaluating all evidence in the administrative record ("AR"), the Court makes the following findings of fact, including any findings of fact found in the Conclusions of Law.

    1.    Dr. Raymond Tash participates in an employment group benefit plan provided by his employer, Pacific Dental Services, Inc., and issued by MetLife ("the Plan"). (POL 01.)

    2.    For the first 24 months of benefits, this Plan defines disability as Dr. Tash's inability to perform his "own occupation." After this 24-month period, Dr. Tash remains disabled if he is unable to earn 60% of his prior earnings in "any gainful occupation" that he is qualified to do. Specifically, the Plan provides:

> **Disabled** or **Disability** means that, due to Sickness or as a direct result of accidental injury . . . You are unable to earn:

> \* \* \*
>
> during the Elimination Period and the next 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation from any employer in Your Local Economy; and
>
> after such period, more than 60% of your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

(POL 24.)

3. The Plan also contains a 12-month limitation on benefits for certain medical conditions. This 12-month limitation applied to:

> Disability due to Mental or Nervous Disorders or Diseases, Neuromuscular, Musculoskeletal or Soft Tissue Disorder, Chronic Fatigue Syndrome and related conditions.

(POL 49.)

4. The most relevant of these conditions is the "Neuromuscular, Musculoskeletal or Soft Tissue Disorder" (the "Soft Tissue Limitation"), which is further defined by the Plan as follows:

> Neuromuscular, musculoskeletal or soft tissue disorder including, but not limited to, any disease or disorder of the spine or extremities and their surrounding soft tissue; including sprains and strains of joints and adjacent muscles, unless the Disability has objective evidence of:
> - Seropositive Arthritis;
> - Spinal Tumors, maligancy, or Vascalar Malformations;
> - Radiculopathies;
> - Myelopathies;
> - Traumatic Spinal Cord Necrosis; or
> - Myopathies . . .

(POL 49.)

5. Due to a variety of injuries, Dr. Tash stopped working on October 14, 2010, and made a claim under the Plan on February 24, 2011. (AR 436–37.) On May 31, 2011, MetLife approved Dr. Tash's claim for LTD benefits. It paid back benefits as of February 10, 2011, which is when the Plan's elimination period ended.

6. But in March 2012, MetLife stopped paying benefits to Dr. Tash without providing either notice or an explanation. On April 17, 2012, Dr. Tash wrote the following to MetLife, complaining about the lack of benefits, as well as MetLife's failure to explain what was going on.

> I have attempted to contact MetLife representatives, without success, even though I

have left voicemails. Each time I have called, I have been told there was a new case manager on my case and have never been able to get an explanation for the failure to provide me with my monthly benefits.

(AR 294).

7.  MetLife's claim notes show that in mid-February 2012 MetLife was re-evaluating Dr. Tash's claim. (AR 602–07.) For some reason, MetLife stopped paying benefits before determining whether continued benefits were actually payable.

8.  On May 7, 2012, MetLife wrote to Dr. Tash with "important information to share with you regarding your Long Term Disability (LTD) claim . . . ."  (AR 285.)  MetLife stated that it was investigating whether "benefits would continue beyond your plan's benefit under the plan's limited disability benefit provision." (AR 285.) MetLife also announced that it would continue paying benefits under a reservation of rights pending the results of that investigation. (AR 285.)

9.  On June 14, 2012, MetLife denied Dr. Tash's claim. MetLife's denial stated that Dr. Tash's condition was within one of the 12-month limited conditions, although it failed to state whether it was within the "Soft Tissue Limitation" or one of the other limiting conditions. (AR 239–242.)

10. Dr. Tash obtained counsel, George Kingsley, who submitted an appeal on Dr. Tash's behalf.  (AR 167.)

11. On December 7, 2012, MetLife upheld its June 14, 2012 denial. (AR 5–11.)

12. Dr. Tash responded to this denial by filing a lawsuit, which ultimately settled. (AR 1161).

13. Under the terms of that settlement, MetLife agreed to pay Dr. Tash a certain sum in return for Dr. Tash waiving his claim to any further benefits for the remaining 24-month "own occupation" period. MetLife also agreed to evaluate whether Dr. Tash was entitled to benefits for the "any occupation" period, which began on February 11, 2013. (AR 1160–62.)

14. The settlement also expressly incorporated the timing requirements from the Department of Labor's ("DOL") claims handling regulations. "The time frames governing the remand of Tash's LTD claim shall be in accordance with 29 C.F.R. Section 2560.503-1 . . . ." (AR 1161–62.) This means that MetLife was required to decide Dr. Tash's claim "not later than

45 days after receipt of the claim by the plan." 29 C.F.R. § 2560.503-1(f)(3).

15. On August 8, 2014, Mr. Horrow submitted the documents that Dr. Tash would rely on in making his claim under the "any occupation" provision of the Plan. (AR 770–1157).

16. Mr. Horrow's submission to MetLife was complete on August 8, 2014. So under the DOL regulations and the terms of the settlement, MetLife had until September 22, 2014 — 45 days from August 8, 2014 — to decide Dr. Tash's claim. But on September 22, 2014, MetLife didn't decide Dr. Tash's claim. On September 24, 2014, MetLife acknowledged the claim, writing Mr. Horrow that the file had been submitted for a physician review, and that Mr. Horrow "will be notified upon completion of our review and assessment of your clients' claim file." (AR 769.)

17. But that wasn't true, as the claim had not yet been submitted for a physician review. According to Dr. Glass's December 23, 2014 report, MetLife did not refer this case to MCN for a file review until December 12, 2014, after the start of this litigation. (AR 729.)

18. By November 11, 2014, MetLife had still not issued a decision, or provided any explanation for the lack of a decision. On that date, Mr. Horrow wrote to MetLife, in "a good faith effort to avoid litigation over Raymond Tash, D.D.S.'s claim for any occupation disability benefits to Metropolitan Life Insurance Company." Mr. Horrow stated that Mr. Tash's documents had been submitted on August 8 and that MetLife's decision was untimely under ERISA's guidelines. (AR 762.) Mr. Horrow stated that it had been more than three months since Dr. Tash's submission and asked for an immediate decision. (AR 763.)

19. MetLife provided no response at all to Mr. Horrow's letter, so on December 3, 2014, Mr. Horrow filed the present lawsuit.

20. Only after Dr. Tash filed this lawsuit did MetLife provide Mr. Horrow with a December 23, 2014 report from a new MCN reviewer, Dr. Jon Glass. (AR 729.) Dr. Tash has objected to this report (as well as Dr. Glass's report of March 25, 2015).

21. MetLife did not deny Dr. Tash's claim until February 24, 2016. (AR 1468.) Along with the denial, MetLife provided Dr. Tash's counsel, for the first time, an investigative report by Ethos Risk Services ("the Ethos Report") dated August 17, 2015 (AR 1400) and several other documents. Dr. Tash objected to those documents.

22. Dr. Tash responded to MetLife's denial with a March 16, 2016 letter by Dr. Shimizu.

23. MetLife responded again with a new medical report by Dr. Sims. (Dkt. 35-1.) Dr. Tash has objected to this report.

## **CONCLUSIONS OF LAW**

The Court makes these conclusions of law, including any conclusions of law found in the Findings of Fact.

### **Rulings on Evidentiary Issues**

24. Based on circumstances of this case, the Administrative Record in this case closed on September 22, 2014, when Dr. Tash filed the current litigation. All documents created or submitted after that date are outside the Administrative Record.

25. Both sides have moved to admit evidence outside the Record. Both sides objected to the other side's proposed evidence. Based on this Court's finding that the Administrative Record in this case closed on September 22, 2014, the following evidenced submitted by MetLife is outside of the Record:

    a. AR 729-737: Dr. Glass's December 23, 2014 Report;

    b. AR 712-714: Dr. Glass's March 25, 2015 Report;

    c. AR 1398-1399: MetLife's facsimile of August 17, 2015;

    d. AR 1400-1465: Ethos Risk Services Final Investigative Report of August 17, 2015;

    e. AR 1466-1467: MetLife's facsimile of August 7, 2015;

    f. AR 1468-1473: MetLife's denial letter of February 24, 2016;

    g. AR 1474-1476: MetLife's updated claims handling notes; and

    h. Docket 35-1: Dr. Sims' Report of March 25, 2016.

26. In his Motion to Admit Evidence, Dr. Tash sought to admit the following documents:

    a. Dr. Shimizu's report of February 2, 2015 (AR 716-723);

    b. Dr. Shimizu's report of March 16, 2016 (Supp. Horrow Decl., Ex. B);

and

c.  The Declaration of Raymond M. Tash, DDS with Exhibit (Dkt. 31-2) is excluded as unnecessary, as the Court has previously excluded the Ethos Report.

The Court finds it unnecessary to decide whether these documents are admissible, as they were not utilized by the Court in reaching its decision.

**MetLife's Failure to Issue a Timely Denial Violated ERISA, and Has Both Prejudiced Dr. Tash, and Disrupted this Litigation**

27. ERISA trials are conducted on the paper record that the insurer had when it denied the claim, and the plaintiff usually has no opportunity to testify or otherwise introduce evidence outside this record. To add some fairness to this process, ERISA statutory and regulatory provisions create an administrative procedure in which the claimant has the opportunity to introduce relevant evidence into that record.

28. To know what evidence is relevant, claimants must know the reasons the insurer denied their claims. As such, ERISA requires an insurer making an "adverse benefit decision" to provide a written denial identifying the specific reasons for the denial so the insured can address them during the claim appeal process. *See* 29 U.S.C. § 1133 ("[E]very employee benefit plan shall . . . provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial."); 29 C.F.R. § 2560.503-1(g)(1) ("The notification shall set forth, in a manner calculated to be understood by the claimant – (1) The specific reason or reasons for the adverse determination.").

29. This requirement for a specific denial ensures that the insured has an opportunity during the administrative appeal process to submit evidence challenging the denial. This also ensures that the Court has a proper record to review the reason the insurer denied the claim and the insured's evidence challenging the denial.

30. But this process is undermined where, as here, the fiduciary fails to issue a proper denial and fails to provide notice to the insured as to the issues in dispute. As the Ninth Circuit states:

> Requiring that plan administrators provide a participant with specific reasons for denial enables the claimant to prepare adequately for any further administrative review, as well as appeal to the federal courts. A contrary rule would allow claimants, who are entitled to sue once a claim has been "deemed denied," to be "sandbagged" by a rationale the plan administrator adduces only after the suit has commenced.

*Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 720 (9th Cir. 2012) (citations omitted).

31. MetLife's failure to issue a timely denial letter violated ERISA. This violation of ERISA caused Plaintiff the type of prejudice warned about in *Harlick*. Plaintiff was unaware until February 24, 2016 — two days before trial briefings were to be filed — of the reason MetLife refused to pay benefits since the "own occupation" period ended on February 10, 2013. As such, Dr. Tash was denied the ability to submit evidence challenging MetLife's grounds for denial before starting this litigation.

32. MetLife's procedural defaults significantly disrupted the process of litigation in this Court. MetLife's unexplained refusal to issue a denial letter until the eve of trial turned this case from a straightforward issue of whether Dr. Tash was disabled under the Plan into a tangled accumulation of filings and counter-filings regarding matters that distract the Court from the merits of this case. For instance, the Court came to the trial facing fourteen filings with potential issues that required rulings.

**Disposition**

33. Given MetLife's violation of ERISA and the resulting prejudice to Dr. Tash, the Court will exercise its authority under *Pannebecker v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1213 (9th Cir. 2008) and orders the following.

34. MetLife is ORDERED to bring Dr. Tash current on his benefits and pay back benefits, with interest, to Dr. Tash from the beginning of the "any occupation" period on February 11, 2013, to the present. Interest shall accrue at the applicable U.S. Treasury bill rate on February 11, 2013.

35. The Court REMANDS to MetLife for a determination that complies with ERISA of Dr. Tash's benefits under the "any occupation" provision of the Plan.

36. The Court further ORDERS MetLife to continue paying benefits so long as they continue to remain due under the Plan, unless and until MetLife issues a denial that fully complies

1  with ERISA.

2     37.    The Court will enter Judgment in favor of Plaintiff following this Order.

5  DATED: May 19, 2016

                                    Honorable Andrew Guilford
                                  United States District Court Judge